**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **JEROME BROWN,** | * |
| Plaintiff, | * |
| v. | *    Case No.: GJH-18-1664 |
| **SELECT PORTFOLIO SERVICING INC.,** | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Jerome Brown alleges that Defendant violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605, *et seq.*, and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, as it sought to foreclose on his home. ECF No. 1. Pending before the Court is Defendant's Motion to Dismiss. ECF No. 3. Although the Court granted Plaintiff two extensions of time to file an opposition, ECF Nos. 7, 9, Plaintiff failed to respond to Defendant's motion. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss will be granted.

**I.     BACKGROUND[1]**

Jerome Brown owns the real property located at 2926 Galeshead Drive, Upper Marlboro, Maryland (the Property). ECF No. 1 ¶ 10. On March 24, 2009, he executed a Deed of Trust securing an Adjustable Rate Note to MetLife Home Loans, a Division of MetLife Bank, N.A. *Id.* Pursuant to the Deed of Trust and the Note (collectively "the Mortgage Loan"), the lender agreed to provide Plaintiff with the principal sum of five hundred and fifty-three thousand eight hundred

---
[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint or attachments integral to the Complaint and presumed to be true.

1

and seventy-six dollars ($553,876.00) and he agreed to: (1) make monthly payments to the lender or its assigns pursuant to the terms of the Note and (2) provide the lender or its assigns a first priority security interest on the Property. ECF No. 1-1.

The Mortgage Loan was assigned to JP Morgan Chase Bank, N.A. (Chase). ECF No. 1 ¶ 15. Defendant Select Portfolio Servicing, Inc (SPS) acts as the mortgage servicer on Chase's behalf. *Id.* ¶ 12. SPS appointed Substitute Trustees who on December 10, 2015 initiated a foreclosure action against Plaintiff in the Circuit Court of Prince George's County, Maryland because Plaintiff had allegedly defaulted on the Mortgage Loan on June 1, 2010. *Id.* ¶ 16.

On January 4, 2018, Plaintiff submitted his first complete loan modification application. *Id.* ¶ 18. On February 6, 2018, SPS denied Plaintiff's loan modification application claiming that there were "no loss mitigation options" for which he could be approved. *Id.* ¶ 19; ECF No. 1-2. The denial letter, which Plaintiff attached to his Complaint, provided various non-retention options including a short sale and a deed in lieu of foreclosure. ECF No. 1-2 at 2. The letter explained that Plaintiff was not eligible for an "FHA Repayment Plan" given the financial information he had provided. Specifically, the letter stated:

> **Financials Do Not Support**
> We are unable to offer you a plan because after reviewing the financial information you provided to us, we have determined that one or more of the following reasons apply:
> - You do not have sufficient net income to pay the proposed payment.
> - The proposed payment is not feasible.
> - Your Initial payment on the Payment Plan is not sufficient.
> - The written financial information we received from you does not support the proposed payment.

*Id.* at 3. The letter also explained that Plaintiff was not eligible for an "FHA Trial Modification" because:

> **Insufficient Payment Reduction**

> We are unable to offer you this program because in performing our underwriting of a potential modification we could not reduce your principal and interest payment.

*Id.* Finally, the letter explained that Plaintiff was not eligible for the "FHA Unemployment" program because he was not currently receiving unemployment income. *Id.* Although the letter stated that the review was "conducted in accordance with applicable laws and investor eligibility rules," *id.* at 2, it did not state that Plaintiff's loss mitigation application was denied because of an investor restriction, *see id.*

On February 28, 2018, Plaintiff appealed the denial, claiming that his income should be enough to qualify for a loan modification, and arguing that he was not properly evaluated for Home Affordable Modification Programs (HAMP). ECF No. 1 ¶ 21; ECF No. 1-3 at 2. On March 19, 2018, Defendant responded to Plaintiff's appeal providing further explanation of its analysis of Plaintiff's request. Regarding the income issue, Defendant stated:

> [w]e are unable to offer you a Repayment Plan because after reviewing the financial information you provided to us, we have determined that you do not have sufficient net income to pay the proposed payment. Your income was not sufficient to cure the default within a six-month period. To calculate the proposed payment, SPS is required to use the total amount needed to reinstate the account along with the current monthly payment and spread this amount over six months per program guidelines.

ECF No. 1-4 at 2. The letter also stated "your account is an FHA/HUD loan and was ineligible for Home Affordable Modification Programs (HAMP) because this investor does not participate in Treasury programs. We are unable to offer you an FHA Trial Modification program because in performing our underwriting of a potential modification we could not reduce your principal and interest payment which is a program requirement." *Id.*

## II.   STANDARD OF REVIEW

Defendant has moved to dismiss Plaintiff's Complaint asserting that it fails to state a claim upon which relief can be granted. When deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435. 440 (4th Cir. 2011) (citations and internal quotation marks omitted). Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But to survive a motion to dismiss invoking Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)). The factual allegations must be more than "labels and conclusion . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and attachments that are integral to the complaint without converting the motion into one for summary judgment. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.   DISCUSSION

Before considering the sufficiency of Plaintiff's complaint, the Court notes briefly that it is not persuaded by Defendant's arguments that Plaintiff's claims should be dismissed based on res judicata, the Rooker-Feldman doctrine, or the *Colorado River* abstention doctrine. First, Plaintiff has not adjudicated his RESPA or FDCPA claims to a final judgment on the merits, meaning res judicata does not apply. Instead, the only state court ruling referenced by

4

Defendants is the decision not to stay the foreclosure case based on Plaintiff's federal suit. ECF No. 3-1 at 6. This decision was decidedly not a final judgment on the merits of Plaintiff's claims. The Rooker-Feldman doctrine is similarly inapposite here; in considering Plaintiff's claims, this Court is in no way overruling the state court's decision not to stay the foreclosure proceedings. Finally, *Colorado River* abstention is inappropriate here where it is not clear that Plaintiff has raised his RESPA or FDCPA claims as counterclaims in the foreclosure case; Plaintiff solely alleges federal claims before this Court; and Plaintiff seeks damages, not injunctive relief related to the Property, distinguishing this case from the separate state court foreclosure proceeding. *See Agomuoh v. PNC Fin. Servs. Grp.*, No. GJH-16-1939, 2017 WL 657428, at *6 (D. Md. Feb. 16, 2017). Having rejected Defendant's jurisdictional arguments, the Court takes up whether Plaintiff's Complaint states a RESPA or FDCPA claim.

Plaintiff alleges that Defendant violated RESPA by failing to provide specific enough reasons for denying Plaintiff's loss-mitigation application to meet 12 C.F.R. § 1024.1(d)'s requirements. RESPA protects consumers from "unnecessarily high settlement charges caused by certain abusive practices" in the real estate mortgage industry and ensures "that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). RESPA's implementing regulations are codified at 12 C.F.R. §§ 1024.1 to 1024.41 and known as "Regulation X." *See* 12 C.F.R. § 1024.1. Regulation X prescribes duties and responsibilities of mortgage servicers, including by providing for "loss mitigation procedures." *Nash v. PNC Bank, N.A.*, No. CV TDC-16-2910, 2017 WL 1424317, at *3 (D. Md. Apr. 20, 2017). Relevant here, "[i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower," the servicer must state in the required notice to the borrower "the specific reason

or reasons for the servicer's determination for each such trial or permanent loan modification and, if applicable, that the borrower was not evaluated on other criteria."12 C.F.R. § 1024.41(d). This provision is enforceable through a private cause of action pursuant to 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a).

The Consumer Financial Protection Bureau's (CFPB) official interpretation of this regulation specifies that if a loan modification request is denied because of "a restriction by the investor—that is, if the modification cannot be made by the servicer because the owner of the mortgage would not allow some condition necessary for the modification—then the explanation for the denial 'must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial.'" *Weisheit v. Rosenberg & Assocs., LLC*, No. CV JKB-17-0823, 2017 WL 5478355, at *4 (D. Md. Nov. 15, 2017) (citing 12 C.F.R. § Pt. 1024, Supp. 1). "A statement that the denial of a loan modification option is based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient." 12 C.F.R. § Pt. 1024, Supp. 1., §41(d), cmt. 1

Courts have applied this CFPB commentary to the situations that it squarely addresses, finding denial letters that do not name the investor or explain the investor restriction upon which the denial is based violate RESPA.[2] *E.g.*, *Weisheit,* 2017 WL 5478355 *4; *Nash*, 2017 WL 1424317 *1. For example, in *Nash v. PNC Bank, N.A.*, a denial letter that included the following explanation was held insufficient because it did not include the investor's name or offer specifics on the investor restriction:

---

[2] "Although the CFPB's commentary is not binding authority, courts have found its official interpretations to be highly persuasive when they fill a gap in the text of Section 1024.41 and squarely address the factual situation described in the Complaint." *Nash*, 2017 WL 1424317 *4 (internal quotations marks and alterations omitted) (citing cases). *See also Weisheit*, 2017 WL 5478355 *4 n. 3.

6

> [Y]our assignee or mortgage owner, FEDERAL HOME LOAN BANK CINCINNATI, cannot approve your request for assistance for the:
>
> - Making Home Affordable HAMP Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.
> - Making Home Affordable HAMP Tier II Modification because we service your loan on behalf of an investor or group of investors that has not given us the contractual authority to modify your loan for this alternative to foreclosure option.

2017 WL 1424317 *1. In contrast, denial letters that are not based on investor restrictions need not name the relevant investor. *Barron v. EverBank*, No. 1:16-CV-04595-AT-CCB, 2019 WL 1495305, at *13 (N.D. Ga. Feb. 7, 2019). For example, in *Barron v. EverBank*, a court found a denial letter met RESPA's specificity requirements when it stated that "each potential loss-mitigation program was denied because of Plaintiff's insufficient income" even though the letter did not name the investor. *Id.* The income guidelines used by the servicer did not apply to any specific investor, meaning the denial was not based on an investor restriction.

As in *Barron*, here the denial letter specifies that Plaintiff's financial and other information did not support any of the loss-mitigation options. ECF No. 1-2 at 3. The letter does not indicate that a murky investor restriction resulted in the denial. *Id.* Although the letter says that the review was conducted "in accordance with applicable laws and investor eligibility rules," there is no indication in the letter that the income guidelines for an FHA repayment plan, guidelines for reducing principal and interest payments for a trial modification, or guidelines for eligibility for the FHA unemployment program applied because of a specific investor rather than because they are universal guidelines applied by the servicer regardless of the investor. *Id.* Plaintiff's appeal letter, attached to the Complaint, further demonstrates that Plaintiff understood the specific reason he was denied loss-mitigation options. ECF No. 1-3. The appeal argues that

7

Plaintiff's income should be high enough to qualify for loss mitigation, demonstrating that Plaintiff understood that the denial was based on his income, not an investor restriction where an investor failed to give the servicer contractual authority to modify the loan. *Id.* at 2.

Given that the denial letter was not based on an investor restriction, the letter did not need to name the relevant investor to meet RESPA's specificity requirements. And Plaintiff has not otherwise alleged facts that suggest Defendant failed to provide "the specific reason or reasons for the servicer's determination" that Plaintiff was ineligible for a loan modification.12 C.F.R. § 1024.41(d). As a result, Defendant's Motion to Dismiss will be granted as to the alleged violation of 12 C.F.R. § 1024.1(d).

Because Plaintiff's § 1024.1(d) allegation fails, so does his "dual tracking" claim. Dual tracking occurs where a servicer moves towards foreclosure while the loss mitigation process is ongoing in violation of RESPA. *See* 12 C.F.R. § 1024.41(g). "The loss mitigation process begins when a borrower submits a complete loss mitigation application" and "ends when the servicer denies that application on appeal (or after the servicer's first denial, if the borrower fails to appeal)." *Weisheit* 2017 WL 5478355 *4 (citing § 1024.41(g)). Plaintiff's dual-tracking allegation was based entirely on the view that Defendant's denial letter was deficient, meaning the loss mitigation process was ongoing. ECF No. 1 ¶ 49. However, for the reasons described above, the letter met RESPA's requirements, and the loss mitigation process ended when Defendant denied Plaintiff's application on appeal. ECF No. 1-4. Thus, loss mitigation was not ongoing at the time that Defendant proceeded towards foreclosure. In any case, the Complaint does not allege that a foreclosure sale has occurred, ECF No. 1, and "[n]othing in § 1024.41(g) prevents a servicer from proceeding with the foreclosure process, including any publication ... so long as any such steps in the foreclosure process do not cause or directly result in the issuance of

a foreclosure judgment or order of sale, or the conduct of a foreclosure sale." *Green-Wright v. JPMorgan Chase Bank, N.A.*, No. CV ELH-17-3199, 2018 WL 3756714, at *11 (D. Md. Aug. 7, 2018). Thus, Defendant's motion will also be granted as to Plaintiff's § 1024.41(g) allegations.

Plaintiff also alleges that Defendant violated the FDCPA. However, the FDCPA only applies to "debt collectors," and based on the factual allegations, Defendant is not a debt collector. *See* ECF No. 1. The FDCPA defines the term "debt collector" as "(1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016); *see also* 15 U.S.C. § 1692a(6). "The law is well-settled," however, that "mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 718 (E.D. Va. 2003). Based on Plaintiff's allegations, Defendant is a mortgage servicing company, not a debt collector, and is therefore exempt from FDCPA liability. ECF No. 1 ¶¶ 2, 12. As a result, Defendant's Motion to Dismiss will be as to Plaintiff's FDCPA allegations.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted. A separate Order shall issue.

Date: <u>May  2 , 2019</u>  /s/_____
GEORGE J. HAZEL
United States District Judge

9